Not for Publication

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

DARLENE BRAND,

Plaintiff,

-vs-                                                    Case No.   6:15-cv-1881-Orl-37KRS

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.
_____

<strong>REPORT AND RECOMMENDATION</strong>

TO THE UNITED STATES DISTRICT COURT:

This cause came on for consideration without oral argument on the Complaint filed by Darlene Brand, seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits.   Doc. No. 1.   The Commissioner answered the Complaint and filed a certified copy of the record before the Social Security Administration (SSA).   Doc. Nos. 12, 14.   Counsel filed a Joint Memorandum discussing the facts and issues in the case.   Doc. No. 16.[1]   This case was referred to me for issuance of a Report and Recommendation.

---

[1] I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record.   Doc. No. 15.   Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Scheduling Order. *Id.* at 4.

I.      **PROCEDURAL HISTORY**.

In April 2008, Brand applied for disability benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401 *et seq*., and under the Supplemental Security Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C. § 1381, *et seq*., (sometimes referred to collectively herein as the Act).  R. 145-50.  She alleged that she became disabled on March 31, 2005.  R. 145, 149.  Brand's applications were denied initially, on reconsideration, by an Administrative Law Judge ("ALJ"), and by the Appeals Council.  R. 1-5, 19, 61-72.  Brand sought review of that decision by this Court.  The Court concluded that the ALJ erred, reversed the final decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), and remanded the matter for further proceedings.  R. 569-92.

Meanwhile, Brand filed new applications under OASDI and SSI alleging an amended disability date of December 31, 2007.  R. 674-78, 696-700.  The Appeals Council remanded the original applications to an ALJ for further proceedings and consolidated the new applications for a new decision.  R. 594-97.  An ALJ held a second hearing on remand.  R. 475-509.  Thereafter, the ALJ again concluded that Brand was not disabled.  R. 451-74.  Brand again sought review of the decision by this Court.  The Court found that the ALJ erred, reversed the final decision of the Commissioner and remanded the matter for further proceedings.  R. 960-74.

A third hearing was held before a different ALJ on August 4, 2015.  Brand, accompanied by an attorney, and a vocational expert ("VE") testified.  R. 887-929. After considering the hearing testimony and the record, the ALJ found that Brand was insured under OASDI through September 30, 2008.  R. 935.  She has not engaged in substantial gainful activity since March 31, 2005.  *Id.*

The ALJ found that Brand had the following severe impairments: degenerative disk disease in the lumbar, cervical, and thoracic spine and an affective disorder.   These impairments, individually or in combination, did not meet or equal a listed impairment.   R. 936.   The ALJ found that Brand had mild limitations in activities of daily living and social functioning and moderate limitations in concentration, persistence or pace.   *Id*.

The ALJ concluded that Brand had the residual functional capacity ("RFC") to perform a range of light work as follows:

> [She] can lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk for six hours total in an eight-hour workday, and sit for six hours total in an eight-hour workday with normal breaks.   The claimant can push and/or pull unlimitedly. She can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. The claimant can occasionally crouch, balance and stoop and can frequently kneel and crawl.   She must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and to hazardous moving machinery and heights.   The claimant is further limited to performing simple, routine tasks and can work in coordination and in proximity with others.   The claimant can identify normal hazards and take normal precautions.   She would benefit from mental health services.   The claimant must avoid fast-paced work requiring production quotas or time constraints.   The claimant would need help in setting goals.

R. 936-37.   During the hearing, the ALJ stated, "I'm going to say because of the moderate restrictions [in mental functional capacity] and the ability to complete a normal workday and workweek the person would need to avoid any fast paced work, avoid any quotas or time constraints."   R. 923.   In making the RFC determination, the ALJ concluded that Brand's reports of functional limitations arising from her impairments were not completely credible.   R. 943.

Based on the testimony of the VE, the ALJ concluded that Brand could not perform any of her past relevant work.   However, she could perform other light, unskilled jobs available in the national economy.   R. 944-45.   Therefore, the ALJ found that Brand was not disabled.   R. 945.

Brand now seeks review of the final decision of the Commissioner by this Court.

3

## II.   JURISDICTION AND STANDARD OF REVIEW.

Brand having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).   A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## III.   STATEMENT OF FACTS.

After a thorough review of the record, I find that the pertinent facts are adequately set forth in the ALJ's decision and the Joint Memorandum, which facts I incorporate by reference in order to protect Brand's privacy to the extent possible.   Accordingly, I will only summarize facts relevant to the issues raised.

Brand was born in 1961.   R. 33.   She completed the eighth grade.   R. 34.      She previously worked as a cashier-checker, a fast food worker and a store laborer.   R. 52.

Brand testified that, as early as 1986, she had been taking medication for anxiety, panic attacks and nervousness.   R. 36.   Medical records reflect that Brand was diagnosed with anxiety and physical conditions on March 2, 2005.   R. 438.   She was involved in a car accident on May 3, 2005, after which further physical impairments were diagnosed and treated.   *See, e.g.,* R. 388-90, 396-99, 405, 420-23, 435.

On November 2, 2005, Gloria Mikula, M.D., noted that Brand was grieving her son's death in a car accident.   R. 434.   On January 19, 2007, Dr. Mikula diagnosed grieving and insomnia and noted that Brand was not taking Prozac as prescribed.   Dr. Mikula prescribed Xanax.   R. 431.   On

April 27, 2007, Brand was tearful discussing her son.  Dr. Mikula diagnosed depression and prescribed pain medications and a muscle relaxant and increased the dosage of Prozac.  R. 430. On May 27, 2008, Dr. Mikula again diagnosed depression and noted weight gain probably secondary to the depression.  Dr. Mikula prescribed additional medications, including Lortab.  R. 429. Brand testified that she did not attend any grief support groups or group therapy, including through her church, because she was not ready to talk about her son's death.  R. 903, 908.

Julie L. Parker, Psy. D., completed a neuropsychological evaluation on June 23, 2008. Brand reported that she was in pain all the time, had mood swings and could not work with people. She was experiencing severe and prolonged bereavement due to the death of her 16-year-old son. She reported that she became unable to work after her son's death.  She acknowledged suicidal ideations, insomnia, poor appetite despite weight gain and she was tired all the time.  She was depressed and tearful throughout the evaluation.  She reported taking her medications as prescribed. She was homeless and living out of her car.  R. 306-08.

Dr. Parker opined that Brand appeared to function in the below average range of intellectual ability.  Her insight and judgment were poor.  Her current Global Assessment Functioning ("GAF") score was 50 and her GAF for the past year was 45.[2]  Dr. Parker stated that there did not appear to be any cognitive or physical impairments that would impede Brand's ability to perform activities of daily living although she had some decreased independent functioning because of her

---

[2]   The Global Assessment of Functioning (GAF) scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, or unable to care for himself).  *Harold I. Kaplan, M.D. & Benjamin J. Sadock, M.D., Synopsis of Psychiatry* 299 (8th Ed. 1998) (hereinafter *Synopsis of Psychiatry*). A GAF rating of 41-50 reflects "Serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)."  *Id.* at 299.

homeless status.   Her concentration, persistence and pace were "reportedly impaired."   R. 308.

Dr. Parker stated that Brand would need psychiatric and medical treatment to improve her

employability and vocational training.   R. 307-08.

Alvan Barber, M.D., performed an independent medical evaluation on July 2, 2008.   R. 310-

16.   Dr. Barber observed that Brand had no memory deficit, no signs of depression, and her

cognitive function was adequate.   R. 313.

On July 17, 2008, Angeles Alvarez-Mullin, M.D., completed a Psychiatric Review

Technique form after review of Brand's records.   R. 332-44.   She found that Brand had a mood

disturbance, bereavement disorder and a depressive disorder, not otherwise specified.   R. 335.   She

had mild restrictions in activities of daily living and social functioning, and moderate restrictions in

maintaining concentration, persistence or pace.   R. 342.

Dr. Alvarez-Mullin also prepared a Mental Residual Functional Capacity Assessment.   In

section I of the form, Dr. Alvarez-Mullin indicated that Brand was moderately limited in the ability

to carry out detailed instructions, the ability to maintain attention and concentration for extended

periods, the ability to complete a normal workday and workweek without interruptions from

psychologically based symptoms and to perform at a consistent pace without an unreasonable

number and length of rest periods, and the ability to set realistic goals or make plans independently

of others.   R. 328-29.   In the Functional Capacity Assessment, which is section III of the form, Dr.

Alvarez-Mullin opined that Brand would be able to perform simple tasks and maintain a work

routine independently, identify normal hazards and take appropriate precautions.   Dr. Alvarez-

Mullin further wrote:   "Although [claimant] may prefer to work in relative isolation she appears

able to interact with the public, supervisors and coworkers . . . . [She] would benefit from mental health services."   R. 330.

Gary Buffone, Ph.D., completed a Mental Residual Functional Capacity Assessment on November 12, 2008 based on review of Brand's records.   R. 348-50.   In section I of the form, he indicated that Brand was moderately limited in her ability to carry out detailed instructions and maintain attention and concentration for extended periods.   R. 348.   She was also moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.   R. 349.   In section III of the form, Dr. Buffone opined that although Brand may have difficulties with tasks involving sustained focus and complex mental demands, she had the functional mental capacity to carry out simple instructions and tasks.   R. 350.

On October 2, 2009, the Florida Department of Education, Division of Vocational Rehabilitation ("DVR") wrote to Brand advising her that she was eligible for services.   The DVR concluded that Brand fell within Category 1: Individuals who are most significantly disabled.   R. 258.

On December 31, 2009, Elaine Harger completed a vocational evaluation.   R. 261-67. Harger observed that Brand worked with low work energy and limited sedentary stamina in completing her vocational paperwork.   She worked in 15 to 30 minute blocks and then required a break.   She remained on task but had diminished focus.   She was tearful and had difficulty recalling information.   R. 261.   She wanted to work 20 hours per week and wanted work that was quiet and not too strenuous or stressful.   R. 262.   Brand reported a history of difficulty coping with life which was worsened by her son's death.   She had not taken medications since January of 2009

because she could not afford them.  R. 262.  She reported difficulties tolerating noise and odors, breathing, turning or bending her neck, numbness in her fingertips, sitting or standing longer than 15 minutes, balancing, stooping, squatting, climbing a ladder, crawling, walking on uneven ground or taking stairs, driving, dealing with hot or cold, making decisions, controlling her temper, ignoring distractions, relaxing, concentrating and remembering.  R. 263.  Brand described her strengths as being punctual and getting along well with others.  R. 267.

Based on test results, Harger opined that Brand had a written expression disorder, reading disorder and mild mental retardation.  R. 266.  Harger found that due to her physical and emotional difficulties, Brand did not appear ready to return to her prior employment or pursue competitive employment.  Harger wrote: "Until her medical and emotional limitations can be addressed, she is best served by continuing her pursuit of SSDI."  R. 267.

On January 27, 2010, the DVR advised Brand that she was not eligible for vocational rehabilitation services "because your disability is too severe at this time for rehabilitation services to result in an employment outcome."  R. 701.

On September 13, 2012, Dr. Mikula completed a Mental Residual Functional Capacity Assessment.  She opined Brand was markedly limited in her ability to work in coordination or proximity to others without being distracted by them and in the ability to respond appropriately to changes in the work setting; remember locations and work-like procedures; understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to make simple work-related decisions; and to complete a normal workday and workweek without interruptions from

8

psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 882-84, 1197-99.

On September 18, 2013, Brand presented to Raena Baptiste-Boles, Psy.D., for a consultative psychological evaluation at the request of the Office of Disability Determinations. Dr. Baptiste-Boles noted that Brand became tearful while discussing her mental health symptoms, which included sadness/tearfulness, poor motivation/energy, isolation, insomnia, variable appetite, bad dreams, irritability, and agitation. Dr. Baptiste-Boles's impression was depressive disorder, not otherwise specified. She opined that Brand's "mental health symptoms based on report and clinical observations appear to be moderately impacting activities of daily living, vocational performance, and interpersonal interactions." R. 1204-06.

On September 20, 2013, David Tessler, Psy.D., reviewed the record and opined that Brand's affective disorder caused her moderate difficulties in her ability to maintain concentration, persistence, or pace. R. 985. Overall, Dr. Tessler opined that Brand was capable of performing simple, routine tasks. R. 989.

On December 16, 2013, Sharon Ames-Dennard, Ph.D., reviewed the record and opined that Brand's affective disorder caused moderate difficulties in her ability to maintain concentration, persistence, or pace. R. 999. Overall, Dr. Ames-Dennard opined that Brand was capable of performing simple, routine tasks. R. 1003.

On May 19, 2014, Brand underwent a Comprehensive Clinical Assessment at Haven Recovery Center.[3] Cynthia D. Roberts, LMHC, noted that Brand met the criteria for major depressive disorder and posttraumatic stress disorder. R. 1211-12.

_____

[3] The assessment bears a reference to a Judge and a case number, and Dr. Mikula noted that Brand was

On March 18, 2015, Brand returned to Dr. Mikula and reported that she had been without her medications as she could not afford to come in for treatment.   Brand reported that she had been experiencing hallucinations and was not sleeping.   Dr. Mikula noted that Brand had been unable to work and her son was supporting her.   Her impressions included cervical, thoracic, and lumbar degenerative disc disease; major depression; and post traumatic stress syndrome. R. 1213.

On October 12, 2012, John W. Davis, Ph.D., testified at an ALJ's hearing.   Based on his review of the record, Dr. Davis opined that Brand did not have a severe mental impairment that would affect her ability to work, although he agreed with the diagnosis of major depression.   Dr. Davis believed Brand should be limited to simple one- to two-step tasks with minimal public interaction.   R. 492-98.

At the third hearing, the ALJ asked the VE a hypothetical question based on his RFC determination for Brand.   R. 922-23.   The VE testified that this hypothetical person could not perform any of Brand's past relevant work.   R. 923.   However, the hypothetical person could perform the light, unskilled jobs of marker, cafeteria attendant, and ticket taker, which jobs were available in the national economy.   R. 923-34.

## IV.    ANALYSIS.

Brand asserts three assignments of error.   She contends that the ALJ did not comply with this Court's remand order requiring the ALJ to incorporate the mental restrictions identified by Drs. Alvarez-Mullin and Buffone into the RFC or explain why these restrictions do not apply.   She further asserts that the ALJ did not apply the correct legal standards to the opinion of the Florida

---

evaluated at Haven Recovery Center after a domestic violence incidence.   R. 1214.

DVR.   Finally, she argues that the ALJ erred in finding her testimony to be not entirely credible. These are the only issues I will address.

A.   *Compliance With Court's Remand Order.*

On May 16, 2014, this Court reversed the final decision of the Commissioner and remanded the case "for further proceedings consistent with the findings in this Order."   R. 973.   One of the findings in the order was as follows:   "Thus, on remand, the ALJ must sufficiently incorporate into her RFC assessment the mental restrictions identified by Drs. Alvarez-Mullin and Buffone or explain why, despite according their opinions 'greater weight,' the Plaintiff does not suffer from these restrictions in mental functioning."   R. 972.   Brand contends that the ALJ did not sufficiently incorporate into the RFC Drs. Alvarez-Mullin and Buffone's conclusions that she would be moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms or to perform at a consistent pace without an unreasonable number and length of rest periods (the "normal workday/workweek limitation").   Doc. No. 16, at 21.

On remand, the ALJ gave significant weight to Drs. Alvarez-Mullin and Buffone's opinions. R. 939.   As for the normal workday/workweek limitation, this limitation was included in section I of each of these doctors' mental RFC forms.   Section I of these forms, which contain a list of limitations with boxes to be checked, is, under the SSA's Program Operations Manual System ("POMS"), merely an aid, not an RFC assessment.   *See Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49 (11th Cir. 2012) (quoting POMS DI § 24510.060(B)(2)).[4]   Rather, "[a]fter checking the

---

[4] Unpublished decisions of the United States Court of Appeals for the Eleventh Circuit are cited herein as persuasive authority.

11

boxes as an 'aid,' a doctor is then required to detail his actual RFC assessment" in section III of the form." *Id.* (citation omitted) (quoting POMS DI § 24510.060(B)(2) & (B)(4)).

In the residual functional capacity assessment in section III of the mental RFC form, Dr. Alvarez-Mullin opined that despite the limitations noted in section I, Brand could perform simple tasks and maintain a work routine independently.   Similarly, Dr. Buffone opined in section III of the form he completed that, despite the limitations noted in section I, Brand had the functional mental capacity to carry out simple instructions and tasks.   The ALJ incorporated these mental RFC opinions into his RFC assessment by limiting Brand to work involving simple, routine tasks. Therefore, the ALJ followed the Court's instructions to incorporate in the RFC the mental functional limitations identified by Drs. Alvarez-Mullin and Buffone.

The ALJ also expressly considered the normal workday/workweek limitation in another respect in reaching his RFC assessment.   As noted above, during the most recent hearing, the ALJ stated that he included limitations to avoid any fast paced work, quotas or time constraints to accommodate the normal workday/workweek limitations.   R. 923.   These additional limitations, which were included in the ALJ's RFC assessment, exceeded the limitations that Drs. Alvarez-Mullin and Buffone included in their respective mental RFC assessments.   Therefore, Brand's argument that the ALJ did not properly consider the normal workday/workweek limitation is not supported by the record.

For these reasons, I recommend that the Court find that the first assignment of error is not well taken.

B.      *Vocational Rehabilitation Assessments.*

In this assignment of error, Brand argues that the ALJ erred by failing to state the weight given to the Florida DVR opinions regarding whether Brand would be a viable candidate for vocational rehabilitation services.   While findings of disability by other agencies are generally entitled to great weight, they are not binding on the Commissioner.   *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939-40 (11th Cir. 2011).

The record reflects that the ALJ considered the DVR opinions.   *See, e.g.,* R. 926-28 (citing Exhibits 16E and 17E), 941 (citing Exhibits 17E and 20E).   Although the ALJ did not expressly state the weight he gave to those opinions, the question the DVR was addressing was whether vocational rehabilitation services were likely to "result in an employment outcome," R. 701, not whether Brand was capable of performing any work available in the national economy.   Brand has not presented evidence that the DVR opinions were inconsistent with the ALJ's finding that she had impairments that prevented her from performing her past work, but which did not prevent her from performing other work. *Werner*, 421 F. App'x at 940.   Therefore, as the Eleventh Circuit stated in *Werner*, "[w]ithout further evidence showing that the Florida DVR uses criteria similar to the relevant regulations for DIB and SSI determination, the letter was insufficient to call the ALJ's decision into question."   *Id.*

Therefore, I recommend that the Court find the second assignment of error is not meritorious.

C.      *Credibility.*

In the third assignment of error, Brand asserts that the ALJ's conclusion that her reports of functional limitations were not entirely credible is not supported by the record.   Specifically, she challenges the ALJ's reliance on her activities of daily living, the relational aspects of her mental

health issues, and the ALJ's failure to consider her ability to afford additional treatment.   Doc. No. 16, at 31-32.

If an ALJ decides not to credit a claimant's testimony as to pain and other subjective symptoms, he must articulate explicit and adequate reasons for doing so.   *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).   In this case, the ALJ explained his credibility finding as follows:

> In assessing the claimant's credibility, the record (Exhibit 23D) reveals low lifetime earnings indicating that the claimant's continuing unemployment may not be the result of her health conditions.   The claimant worked after the alleged onset date revealing the ability to perform work activity on at least some level since alleging disability.   Furthermore, the claimant testified that she lives alone and reported a wide array of activities that can be physically and mentally demanding and are not the type expected from a totally disabled individual.   The claimant continues to state she cannot do anything because of grief but is capable of living on her own, having a boyfriend, maintaining a relationship with her sister, and can take care of herself and partake in daily activities.   The claimant has chosen to not seek counseling through church or with any mental health specialist, further indicating that her symptoms may not be as severe or limiting as alleged.   The May 2014 assessment from Haven Recovery Center appears to be court ordered related to a domestic issue, indicating that at least some of her issues may be relational rather than resulting from her condition.

R. 943.   Substantial evidence in the record supports the ALJ's conclusion.

While Brand is correct that activities of daily living are generally not dispositive of a claimant's ability to perform substantial gainful activity, SSA regulations require an ALJ to consider daily activities among other evidence in determining the claimant's ability to work.   20 C.F.R. § 404.1529(a); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987).   Therefore, the ALJ did not err in his consideration of those activities.

Dr. Mikula's treatment notes confirm that Brand was evaluated at Haven Recovery Center after a domestic violence incidence.   The Haven Recovery Center report references a case and a Judge.   This is record support for the ALJ's finding that the assessment by the Haven Recovery

Center was court ordered, related to a domestic issue and showed that "at least some of her issues may be relational rather than resulting from her condition."   R. 943.

Finally, the ALJ did not overlook evidence that Brand could not afford treatment. *See, e.g.,* R. 943.   Rather, he specifically observed that she had not sought counseling through her church. The record also reflects that Brand declined to attend grief support groups.   The availability of free sources of counseling that Brand declined to use supports the ALJ's conclusion that her symptoms may not have been as severe or limiting as she alleged.

Because the ALJ articulated specific and adequate reasons supporting his credibility decision, and these reasons are supported by substantial evidence in the record, I recommend that the Court find that the third assignment of error is unavailing.

## V.     RECOMMENDATION.

For the reasons set forth herein, I **RESPECTFULLY RECOMMEND** that the decision of the Commissioner be **AFFIRMED**.   I further recommend that the Court direct the Clerk of Court to issue a judgment consistent with its order on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its filing shall bar an aggrieved party from challenging on appeal the district court's order based on unobjected-to factual and legal conclusions.

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on November 7, 2016.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy